IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DWIGHT WILLIAMS,<br>　　　　Petitioner<br><br>　　v.<br><br>JESSICA SAGE,<br>　　　　Respondent | : No. 3:24-CV-0129<br>:<br>: (Judge Munley)<br>:<br>:<br>:<br>:<br>: |

## **MEMORANDUM**

Petitioner Dwight Williams initiated the above-captioned action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He alleges that the Federal Bureau of Prisons (BOP) improperly calculated his earned time credits under the First Step Act (FSA), Pub. L. 115-391, 132 Stat. 5194 (2018). For the following reasons, the court will dismiss Williams' Section 2241 petition.

## I.　BACKGROUND

Williams is currently serving a 110-month sentence imposed in 2021 by the United States District Court for the Eastern District of Virginia for various controlled substance offenses. (See Doc. 7-2 at 1 ¶ 3; Doc. 7-3 at 2). His current projected release date, via FSA release, is June 20, 2026. (See Doc. 7-2 at 1 ¶ 3; Doc. 7-3 at 2).

Williams filed the instant Section 2241 petition in January 2024. (See generally Doc. 1). His petition is difficult to follow, but he appears to allege that the BOP failed to properly calculate his earned time credits under the FSA. (See id. at 2 ¶¶ 11-12). Under Williams' calculations, he contends that he should have been released in November 2022. (See id. at 2 ¶ 12).

Respondent timely responded to the Section 2241 petition. (See generally Doc. 7). Williams did not file a traverse and the time for doing so has passed. His Section 2241 petition, therefore, is ripe for disposition.

## II.   DISCUSSION

Williams contends that the BOP miscalculated his FSA time credits. Respondent counters that Williams failed to exhaust his administrative remedies and that, even if he had properly exhausted his claim, his FSA credits have been accurately computed. Respondent is correct on both accounts.

### A.   Exhaustion of Administrative Remedies

Although there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims. See Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) (citing Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986)); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion allows the relevant agency to develop a factual

2

record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy." Moscato, 98 F.3d at 761-62 (citations omitted). The BOP has a specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment. See generally 28 C.F.R. §§ 542.10-.19. That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel. See id. §§ 542.13-.15.

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review. See Moscato, 98 F.3d at 761. Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that consists purely of statutory construction. See Vasquez v. Strada, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). Exhaustion is likewise not required when it would be futile. Rose v. Lundy, 455 U.S. 509, 516 n.7 (1982); see Cottillion v. United Refining Co., 781 F.3d 47, 54 (3d Cir. 2015) (affirming, in ERISA context, futility exception to exhaustion requirement). "In order to invoke the futility exception to exhaustion, a party must 'provide a clear and positive showing' of futility before the District Court." Wilson

3

v. MVM, Inc., 475 F.3d 166, 175 (3d Cir. 2007) (quoting D'Amico v. CBS Corp., 297 F.3d 287, 293 (3d Cir. 2002)).

The record plainly reflects that Williams did not exhaust his administrative remedies with respect to any FSA time-credit claim. To date, Williams has filed two administrative remedies concerning FSA credits. The first remedy, 1119343, was denied at the first-level appeal by the Regional Director in August 2022. (See Doc. 7-4 at 2-3). Williams did not appeal that denial to the General Counsel (sometimes referred to as "Central Office"). (See id.; see also Doc. 7-2 at 3 ¶ 8). Williams filed a second remedy, 1144837, on December 14, 2022. (See Doc. 7-4 at 4). That remedy was denied at initial review by the warden six days later. (See id.) Williams did not appeal the warden's denial to the Regional Director or to the General Counsel. (See id.; see also Doc. 7-2 at 3 ¶ 8).

Proper exhaustion requires an inmate to complete each step of their facility's grievance process and to do so properly so that the agency decides the issue on the merits. See Woodford v. Ngo, 548 U.S. 81, 90 (2006) (explaining that proper administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (citation omitted)). Williams' failure to do so precludes this Court from ruling on the merits of his Section 2241 petition. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 762 (3d Cir. 1996); Ryan v. United States, 415 F. App'x

4

345, 347 (3d Cir. 2011) (nonprecedential) ("As [Petitioner] readily acknowledges that he failed to exhaust available administrative grievance processes, the District Court was correct to dismiss his petition." (citing Moscato, 98 F.3d at 760)).

### B. Merits of FSA Claim

Even if Williams had exhausted his FSA challenge, it is likely meritless. The BOP appears to have correctly calculated Williams' FSA time credits.

As Respondent points out, Williams has been afforded 365 days' credit toward early placement into supervised release (the maximum amount allowed by statute), and an additional 100 days' credit toward early placement in a residential reentry center or home confinement. (See Doc. 7-2 at 3 ¶ 9); 18 U.S.C. § 3624(g)(3). Williams began accruing FSA credits on April 20, 2021, at a rate of 10 days for every 30 days of successful FSA programming. (See Doc. 7-5 at 1); 18 U.S.C. § 3632(d)(4)(A)(i). After he received two assessments at a low or minimum recidivism risk level, he began accruing time credits at a rate of 15 days of time credits for every 30 days of programming. (See Doc. 7-5 at 1); 18 U.S.C. § 3632(d)(4)(A)(ii). Thus, the total amount of FSA time credits Williams accrued is 465 days, which is the amount of credits he has been afforded by the BOP. (See Doc. 7-2 at 3 ¶ 9).

5

Williams did not file a traverse to Respondent's answer to his petition, nor did he provide a copy of any of his administrative remedies that would potentially expound on why he believes that his FSA time credits have been miscalculated. Williams, therefore, has failed to identify any error with the BOP's calculations or assert a specific argument regarding why he contends that he has earned more FSA time credits than reflected in his records. No relief could be granted on such a vague and conclusory habeas challenge.

Williams' petition may be liberally construed as arguing that he should have immediately accrued time credits at a rate of 15 (rather than 10) days for every 30 days of successful FSA programming. (See Doc. 1 at 2 ¶ 12). If so, that argument is meritless.

Williams did not immediately begin to accrue time credits at a rate of 15 days for every 30 days of successful FSA programming. Rather, that 5-day increase did not occur until he had "2 consecutive assessments" during which he did not increase his recidivism risk. See 18 U.S.C. § 3632(d)(4)(A)(ii). Indeed, the plain language of the statute indicates that there are two prerequisites to begin earning 15 days, rather than 10 days, of time credits per 30 days of successful FSA programming. The prisoner must: (1) be determined by the BOP to be at a "minimum" or "low" risk for recidivating, and (2) not have increased their recidivism risk "over 2 consecutive assessments." See id. Only then can an

6

eligible prisoner "earn" time credits at a rate of 15 days of credit for every 30 days of successful programming. See id.; see also Khatiwala v. Rickard, No. 4:23-CV-00327, 2023 WL 6143509, at *4-5 & n.50 (M.D. Pa. Sept. 20, 2023) (Brann, C.J.). This interpretation is bolstered by the corresponding agency regulations. See 28 C.F.R. § 523.42(c); Khatiwala, 2023 WL 6143509, at *5 (noting that, even if there were ambiguity in Section 3632(d)(4)(A)(ii), BOP's interpretation was not unreasonable or impermissible (citing, inter alia, Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-45 & n.11 (1984))).

In sum, because Williams failed to exhaust his administrative remedies, the court must dismiss his Section 2241 petition. See Moscato, 98 F.3d at 762; Ryan, 415 F. App'x at 347. Moreover, even if Williams had properly exhausted his administrative remedies, it appears that his underlying claim is meritless.

### III. CONCLUSION

Based on the foregoing, the Court will dismiss Williams' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate Order follows.

Date: 3/27/24

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

7